IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD PETERSEN, *et al.*,

                Plaintiffs,

v.

HORMEL FOODS COPORATION
and JENNIE-O TURKEY STORE, INC., *et al.*,

                Defendants.

OPINION and ORDER

24-cv-137-jdp

---

In this personal injury case, plaintiff Richard Petersen is suing defendants Hormel Foods Corporation and Jennie-O Turkey Store, Inc. for alleged injuries he sustained during a chemical delivery to one of defendants' feed mills. Previously in this case, the court ordered *in camera* review of documents defendants withheld based on claims of privilege or work-product protection. Dkt. 79. The court has reviewed the documents and finds that defendants have largely failed to support these claims. Accordingly, the court ORDERS defendants to produce in full every document listed in their fourth amended privilege log, Dkt. 75-1, other than HORMEL000627-629, which is privileged, and HORMEL000630-631, 632-633, 634-635, 636-637, 638-644, 645-648, 649-650, 651, and 652-656, which must be produced, except their final emails may be withheld.

BACKGROUND

On October 31, 2022, plaintiff delivered a shipment of liquid lysine to one of defendants' facilities. Dkt. 29 at 3. According to plaintiff, he was directed to unload the lysine into the wrong tank, which mixed with the contents of that tank and produced a noxious gas

that injured him. *Id.* at 3–4. Plaintiff filed this lawsuit claiming common law negligence and statutory failure to maintain a safe work environment. *Id.* at 4–5.

Discovery commenced, and plaintiff moved to compel the discovery of certain documents defendants had withheld as privileged or protected work-product. Dkt. 36. The court granted the motion in part and instructed defendants to supplement their privilege log with necessary information and reevaluate their claims of privilege for compliance with the legal standards outlined in the court's opinion. Dkt. 69 at 7. Defendants produced a second, and then a third, amended privilege log, after which plaintiff filed a motion to enforce the court's discovery order, claiming, among other things, that these iterations still fell short. Dkts. 71, 72 at 2. In response, defendants produced a fourth amended privilege log, Dkt. 75-1, which they argued fully complied with the court's order. Dkt. 74 at 2.

The court ordered *in camera* review of the all the documents listed in the fourth amended privilege log and invited defendants to submit any additional explanation or sworn testimony to support withholding the documents. Dkt. 79. Defendants timely submitted the materials for *in camera* review, Dkt. 84, and filed a short brief with some additional argument, Dkt. 82.

LEGAL STANDARDS

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection, the party must: (1) expressly make the claim, and (2) describe the nature of the documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable other parties and the court to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). The party resisting discovery bears

2

the burden of showing that the withheld documents are in fact privileged or protected. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

### A. Attorney-client Privilege

"The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citations omitted). The privilege adheres "only if [the communications] constitute legal advice or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir. 1990). Additionally, the attorney-client privilege only shields communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged. *United States v. Evans,* 113 F.3d 1457, 1462 (7th Cir. 1997); *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991).

The Seventh Circuit has adopted Professor Wigmore's formulation of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except [if] the protection [is] waived.

*Evans,* 113 F.3d at 1461. "The party seeking to invoke the privilege bears the burden of proving all of its essential elements," *id.,* and "each of these elements must be established as to each document, as the mere existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 86 (N.D. Ill. Nov. 10, 1992).

**B.  Work Product**

The work-product doctrine gives qualified protection to documents prepared in anticipation of litigation. *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1118 (7th Cir. 1983).  If a document that was prepared in anticipation of litigation serves another business purpose as well, it is still protected work product only if "the primary motivating purpose behind [its] creation" is "to aid in possible future litigation." *Id.* at 1119.  By contrast, "[m]aterials created in the ordinary course of business which may have the incidental effect of being helpful in litigation" are not protected work product. *Lynk Labs, Inc. v. Juno Lighting LLC*, No. 15 C 4833, 2016 WL 6135711, at *2 (N.D. Ill. Oct. 21, 2016) (citation omitted); *see also Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996) ("[W]e look to whether in light of the factual context 'the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.'" (quoting *Binks*, 709 F.2d at 1119) (emphasis in *Binks*)).

Unlike the attorney-client privilege, a party may discover certain documents protected by the work-product doctrine by showing "substantial need" and inability to obtain equivalent information "without undue hardship."  Fed. R. Civ. P. 26(b)(3).  "Opinion" work product, however, is not discoverable.  *Id.*  Such materials include documents revealing "mental impressions, conclusions, opinions or legal theories."  *Id.*

ANALYSIS

After reviewing the disputed documents *in camera*,[1] the court finds only a handful contain information that falls within the ambit of attorney-client privilege or work-product

---

[1] Defendants submitted their documents for *in camera* review in a batch, and this submission included some non-logged documents.  For example, the batch submitted included

4

protection. Procedurally, defendants' privilege log remains deficient, with many entries missing key pieces of information. Additionally, several entry descriptions are incomplete, creating a misleading summary of the documents withheld. Finally, in addition to the procedural shortcomings, defendants have largely failed to carry their burden as to the majority of their claims for work-product protection.

The court begins by discussing the procedural and substantive issues with defendants' privilege log. Next, it discusses the merits of defendants' claims of attorney-client privilege and work-product protection.

A. **Privilege Log**

Defendants' fourth iteration of their privilege log remains largely deficient and now, with the *in camera* review complete, is chargeable with several newly discovered issues. A party withholding responsive documents must produce a privilege log that identifies for *each* separate document or communication the following information: (1) the name and job title or capacity of the author(s)/originator(s), (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party, (3) a general description of the document by type, (4) the date of the document, and (5) a general description of the subject matter of the document. *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 380 (S.D. Ind. Oct. 21, 2009) (citing *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006); *In re Grand Jury Proc.*, 220 F.3d 568, 571 (7th Cir. 2000)).

---

HORMEL000027-28, which is a document labeled "Standard Operating Procedures." This document was not logged, and the court assumes that this means it was not withheld. The court confines this opinion and order to the documents listed on the privilege log and will not discuss any non-logged documents even if they were included in the *in camera* submission with the understanding these documents were produced and are not at-issue.

After receiving explicit judicial instruction, *see* Dkt. 69 at 5, and making four attempts, defendants' privilege log still fails to satisfy these minimum requirements. A significant number of entries still lack any information pertaining to the author, recipients, or purpose of the document, and the legitimacy of the claims of work-product protection are thus in question. Defendants profess that they have made efforts to uncover the missing information, Dkt. 74 at 4–7, but efforts are not enough to satisfy the requirements. Because defendants bear the burden of proving their claims of privilege, ambiguity as to the origin of their withheld documents does not weigh in defendants' favor.

In addition to these persistent issues with missing information, several of the log entries are not complete. The fourth amended privilege log lists HORMEL000630-631, 632-633, 634-635, 636-637, 638-644, 645-648, 649-650, 651, and 652-656 as a series of emails sent from Hormel's human resources manager to Hormel's paralegal in March 2023. Dkt. 75-1 at 4–5. Defendants describe these emails as forwarding documents already listed on the log or forwarding unexplained email exchanges, but this is misleading.

Contrary to the log entries, every one of these emails contains at least one other email absent from the log entry description. For example, HORMEL000636-637 describes in full an "[e]mail from Lynn Travaglio to Jill Burma forwarding the Excel sheet listed [previously in the privilege log] as attachments." In truth, the entirety of HORMEL000636-637 contains two additional emails sent and received by *ten* other people, none of whom are listed in the log and some of whom are not even included in the attached name index, Dkt. 75-1 at 7. And although the final email forwarding the full email string was sent in March 2023, the emails in the chain were largely generated in November 2022. By failing to log each email and each attachment as a separate document, defendants obscured key aspects of what they were withholding.

6

These entries fail to comply with Rule 26(b)(5)(A) and are at odds with the mechanics and spirit of civil discovery. Such noncompliance can carry serious consequences including waiver of privilege or protection. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp*, No. 17 C 1973, 2018 WL 1281393, at *2 (N.D. Ill. Jan. 10, 2018) ("[N]oncompliance [with Rule 26(b)(5)(A)] can, in the discretion of the court, have serious consequences, including a finding that the claim of privilege has been waived or forfeited."); *see also Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) ("Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith."); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("[F]actors [the court considers when determining whether privilege has been waived] should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process.").

The court has explained defendants' obligations previously, *see* Dkt. 69 at 4–5, and we are beyond the point of second, third, or fourth opportunities to amend. In light of this case's history, the court would be justified in finding defendants' unsupported claims of privilege and work-product protection waived. But, for thoroughness, the court will also address the merits.

**B. Attorney-Client Privilege**

Defendants claim attorney-client privilege for two entries: HORMEL0000627-629, a litigation hold order issued by defendants' corporate counsel, and HORMEL000011-12, a summary of the events of October 31, 2022, including possible corrective actions, next steps, and photographs.

The litigation hold order, HORMEL0000627-629, is privileged because it was drafted by an attorney and communicated to defendants' agents as legal advice. *See United States v. Cmty. Health Network, Inc.*, No. 1:14-CV-01215-RLY-MKK, 2023 WL 4761664, at *4 (S.D. Ind. July 26, 2023) (listing cases supporting litigation hold orders are generally privileged and not discoverable).

The summary of events, HORMEL000011-12, is not privileged. The log claims this document was "prepared at the direction of in-house counsel," but neither names the attorney nor explains how those directions were given, to whom, or when. Dkt. 75-1 at 3. Defendants now assert in their *ex parte* brief that the document was "communicated to in-house General Counsel . . . Lori Marco." Dkt. 82 at 3. Of course, receiving directions from an attorney, as the log claims, and communicating something to an attorney, as the brief claims, are not the same thing. But even crediting both versions of events, naming an attorney now does not help defendants' cause, primarily because the summary of events does not seek or communicate any legal advice. It is possible the summary of events was communicated to Attorney Marco at some point in time, and that communication itself may be privileged (although it was not logged), but communicating an originally non-privileged document after the fact does not transform that document into a privileged one.

By now, defendants must understand it is entirely their burden to prove this document satisfies the elements of attorney-client privilege, *Allendale Mut. Ins. Co.*, 145 F.R.D. at 86, and the court has allowed many opportunities for them to do so. Time has run out. Considering the entry's lack of necessary information, defendants' inconsistent characterization of the attorney's involvement in the document's creation, and the complete lack of any legal advice

8

in the document itself, defendants' claim of privilege is both unsupported and now waived. Whether the document is protected work-product is discussed in the section below.

**C. Work Product**

Defendants claim work-product protection for every document and solely work-product protection for all but two of the forty-one entries. Dkt. 75-1 at 3–5. In their *ex parte* brief, defendants argue that the withheld documents are protected because an on-duty site manager and other employees immediately anticipated a lawsuit on the day of the incident, implying subsequent documents were made in anticipation of litigation. Dkt. 82 at 3. Defendants cite the site manager's declaration in support, which asserts that, "after observing plaintiff's potential medical issues, defendants believed that litigation was imminent[.]" Dkt. 44 at 2. Defendants conclude by noting that one document, HORMEL00011–12, was shared with in-house counsel, as discussed above. *Id.* Defendants offer no additional evidence or support for their claims in the *in camera* submission.

To gain work-product protection, defendants must show that "the *primary motivating purpose* behind the creation of the document or investigative report must be to aid in possible future litigation." *Binks Mfg. Co.*, 709 F.2d at 1119 (internal citation and quotation omitted) (emphasis added). It is not enough to aver that corporate personnel broadly believed litigation was likely. *See id.* ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product[.]") (internal citation omitted). If that satisfied a party's burden, practically every document generated after an incident like the one involved here would be protected work product—an obviously untenable result with no precedential support.

9

Here, only one of the entries, HORMEL000627-629, list a named attorney as a creator, sender, or receiver of a document. *See generally* Dkt. 75-1. And apart from the brief reference to Attorney Marco, discussed above, defendants' filings do not explain who or what motivated the creation of the withheld documents. While not necessary to prove work-product protection, *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. Aug. 10, 2000), an attorney's involvement in the creation or reception of a document is helpful information, especially when the documents present as run-of-the-mill corporate summaries, forms, or other records prepared in the ordinary course of business to which work-product protection does not apply.

With no meaningful insight into role that attorneys played and no evidence or explanation in the *ex parte* submissions showing that the documents were indeed motivated primarily by the anticipation of litigation, the court's analysis below hinges on what it can glean from the log's descriptions. The court has grouped them by category.

**1. Summaries and Timelines**

The first category encompasses correspondence, notes, PowerPoint presentations, and photos that summarize, explain, or analyze the October 31, 2022, incident and its immediate aftermath.

- HORMEL000011-12 is a written summary of the incident that concludes with ideas for possible corrective actions and next steps. It appends some pictures of the truck and the tank at the heart of the case. It appears to be a factual assessment of what happened and why. It contains no legal strategy. Neither the document nor the log indicate the author or recipients.

10

- HORMEL000013-22 is a PowerPoint presentation conveying the same information contained in HORMEL000011-12. The first slide lists feed mill managers Maury Burnett and Jess Rolston and the log lists them as the presentation's authors. It is not clear why this presentation was created or with whom this presentation was shared. Like the summary discussed above, it appears to be a factual assessment of what happened and why.

- HORMEL000023-26 is a November 1, 2022, memo from Sam Blick, defendants' safety representative, to management-level employees. It generally discusses and analyzes the events of October 31, 2022, and lists some ideas for prevention controls. It appears to be a factual assessment of what happened and why. It contains no legal strategy.

- HORMEL000029-55 is a series of flowcharts, tables, graphs, and other representations of data. This collection of charts has all the hallmarks of standard business material that is filled out after an incident as standard operating procedure. Neither the document nor the log indicate the author or recipients.

- HORMEL000060 is a timeline of the events of October 31, 2022. It is a simple factual timeline. There is no strategy or impressions included. Neither the document nor the log indicate the author or recipients.

- HORMEL000061, HORMEL000620, and HORMEL000848 are all the same document containing a bulleted summary of the immediate aftermath and impact of the incident. There is no strategy or impressions included. Neither the document nor the log indicate the author or recipients.

- HORMEL000062 is a handwritten note titled "Root Cause Analysis" and includes three names: Tony, Travis, Don. It is not clear who these people are. Neither the document nor the log indicate the author of this note or why it was created. It appears to be a list of possible reasons why the incident occurred and what to do in the future to avoid similar incidents.

- HORMEL000590 and HORMEL000671 are related email strings from October 31 and November 1, 2022, involving some senior employees and someone named Edward Simes, who is not listed in the log's index. The e-mails provide contemporaneous updates on the incident, including details of the emergency response and coordination with local officials.

- HORMEL000593-619 is a compilation of various documents listed in the privilege log, which are all discussed elsewhere in this opinion. The log says that this compilation is the internal file of Sam Blick, defendants' safety representative. Defendants do not explain why Blick kept this file, but it would make sense that a safety representative would keep information about the incident as part of their ordinary job duties.

These documents all appear to be created, sent, and/or received by non-lawyers and, apart from the conclusory statement in the log that HORMEL000011-12 was "prepared at the direction of [an unnamed] in-house counsel," there is no evidence lawyers played any role in their development. They do not mention litigation. They do not mention litigation strategy. They merely factually recount what happened and discuss ways to address the accident.

Work-product protection does not apply to any of these. Nothing in the documents, their descriptions, or the senders and receivers indicate that they were primarily created in

12

anticipation of litigation. Rather, they appear to be the kinds of materials any company would create in the immediate aftermath of an accident to develop an internal understanding of what happened, ensure the safety of the facility and workers, and plan for the future. Documents made for operational reasons—even if eventually relevant to litigation in the future—are considered created in the ordinary course of business and thus fall outside work-product protections. *See, e.g., United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999).

2. **Emails**

The second category contains emails exchanged by various non-lawyer plant employees concerning staff scheduling, facility status, and remediation efforts.

- HORMEL000657-658 is a November 2, 2022, email exchange between safety representatives discussing research on chemical mixing and safety recommendations.

- HORMEL000659-660 is a November 2, 2022, email exchange between HR and management-level employees discussing particulars of remediation measures and inquiring about employee responsibilities for generating written summaries and analysis of the incident.

- HORMEL000661 is an October 31 and November 2, 2022, email string involving feed mill, HR, and management-level employees and attaching and forwarding the PowerPoint presentation listed in HORMEL000013-22.

- HORMEL000662 is a November 2, 2022, email exchange between Burnett and Jose Rojas, a Jennie-O vice president, discussing the time required to repair a tank damaged in the incident.

13

- HORMEL000663, HORMEL000664, and HORMEL000665 are November 2, 2022, email exchanges involving Rolston and engineering and safety staff discussing remediation efforts and the operation of the mill.

- HORMEL000666 is a November 2, 2022, email from Rolston to Burnett and others discussing the timeline for the resumption of mill operation following the incident.

- HORMEL000667 is a November 2, 2022, email from Rolston to Burneett and others discussing remediation efforts and disposal plans for chemicals involved in the incident.

- HORMEL000668 is a November 1, 2022, email string involving Blick and Mike Gallmeier, an HR employee, discussing efforts to empty and remove the tank involved in the incident.

- HORMEL000669-670 is a November 1, 2022, email string forwarding a complementary e-mail to the local sheriff's department and discussing Hormel's emergency response and ongoing work with the department.

The emails are devoid of any indication they were drafted primarily in anticipation of litigation. Rather, they are communicating facts about the incident, making and carrying out plans to make the facility safe, and coordinating efforts to get the facility back up and running. Even if these communications are eventually relevant to future litigation, they are not primarily for that purpose and thus fall outside work-product protections. *See, e.g., Frederick*, 182 F.3d at 501.

**3. Form Documents**

This category contains filled-out forms for employee illness/injury, chemical spills, supervisor investigations, duplicates of the forms, and emails discussing them.

- HORMEL000063, HORMEL000591, and HORMEL000592 are each a filled-out Hormel EMS Manual forms related to chemical spills or releases.

- HORMEL000134-139[2] and HORMEL000621-624 are the same email exchange discussing and attaching various forms documenting the medical care and treatment of a Jennie-O Turkey employee.

- HORMEL000625-626 is a filled-out Jennie-O Turkey Store Employee Illness/Injury Report Form regarding potential injuries incurred on October 31, 2022.

The forms possess all the hallmarks of paperwork completed in the normal course of business as a matter of corporate record keeping, and the privilege log descriptions do not suggest otherwise. These are categorically not work product.

**4. Draft Correspondence with Wisconsin DNR**

HORMEL000588 and 589 are drafts of emails that were eventually sent to the Wisconsin Department of Natural Resources concerning details of the incident. None of the authors or recipients are attorneys, and neither the log nor the contents of the documents suggest the emails or the notes in them pertain to legal strategy or pending litigation.

---

[2] As written, this entry begins one page into a document and ends on the first page of an unrelated document. Considering the logs description, the court believes this to be a scrivener error and considered HORMEL000133-138.

**5. Emails sent to Hormel Paralegal**

This category contains a series of emails sent in March 2023 from a human resources manager to Hormel's paralegal. The emails appear to be forwarding information in response to the March 2023 litigation hold, HORMEL000627-629, issued by Hormel's in-house counsel, although that is not stated in the log or argued elsewhere. As discussed above, the forwarded information was generated in the immediate aftermath of the incident months before the litigation hold.

- HORMEL000630-631 includes three emails, one of which forwards the PowerPoint presentation listed in HORMEL000013-22.
- HORMEL000632-633 includes six emails in which various employees discuss the incident, corrective actions, data collection, and status of the tank involved in the incident.
- HORMEL000634-635 includes two emails and forwards the summary listed in HORMEL000011-12.
- HORMEL000636-637 includes three emails and forwards an Excel spreadsheet listed in HORMEL000029-55.
- HORMEL000638-644 includes seventeen emails discussing the impact of the incident on defendants' plant and forwards the documents listed in HORMEL000013-22 and 000060.
- HORMEL000645-648 includes ten emails discussing the impact of the incident and forwards the document listed in HORMEL000629.
- HORMEL000649-650 contains five emails summarizing the incident and discusses potential future preventative measures.

- HORMEL000651 contains two emails and forwards a high-level overview of the incident and its immediate aftermath.
- HORMEL000652-656 contains four emails discussing defendants' public response to the incident, including social media posts from the Barron County Sherif's Department stating that the highway near the mill was closed due to a chemical leak.

Because the emails were sent to a paralegal in response to a litigation hold, work-product protection may apply to that forwarding communication, but forwarding email chains to a paralegal months afterwards does not transmute the discoverable constituent emails into protected work-product. Defendants should have evaluated each email in the various chains for privilege or work-product protection and then either logged or produced each email separately as appropriate.

The constituent emails are neither protected work-product nor privileged. They all fall into the same category of routine communications and documents generated in the normal course of business discussed in sections 1. and 2. above. None of the recipients or senders of the emails are lawyers as far as the court can tell—some of the recipients are omitted from defendants' employee name index.

ORDER

IT IS ORDERED that:

1. Defendants shall produce in full every document included in their fourth amended privilege log, Dkt. 75-1, other than HORMEL000627-629 and HORMEL000630-631, 632-633, 634-635, 636-637, 638-644, 645-648, 649-650, 651, and 652-656.

2. HORMEL000630-631, 632-633, 634-635, 636-637, 638-644, 645-648, 649-650, 651, and 652-656 may be produced with the final email redacted consistent with section **C. 5.** of this opinion.

Entered January 15, 2025.

                            BY THE COURT:

                            /s/

                            _____
                            ANITA MARIE BOOR
                            Magistrate Judge